2005 UT App 382

**STATE of Utah, in the interest of J.E., a person under eighteen years of age.**

**J.W., Appellant,**

**v.**

**State of Utah, Appellee.**

**No. 20040762–CA.**

Court of Appeals of Utah.

Sept. 9, 2005.

Jeffrey J. Noland, Noland Law Office, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Carol L.C. Verdoia, Assistant Attorney General, Salt Lake City, for Appellee.

Martha M. Pierce and Suchada P. Bazzelle, Salt Lake City, Guardians Ad Litem.

Before BENCH, Associate Presiding Judge, DAVIS, and GREENWOOD, JJ.

## OPINION

DAVIS, Judge:

¶ 1 In this parental rights termination case, counsel for appellant filed an Amended Petition on Appeal, *see* Utah R.App. P. 55, suggesting that no non-frivolous issues existed on appeal.

## BACKGROUND

¶ 2 The child was born in August 2002. Approximately one year later, based upon evidence of drug abuse and domestic violence, the state filed a petition alleging that the child was abused, neglected, and/or dependent pursuant to Utah Code section 78–3a–103. *See* Utah Code Ann. § 78–3a–103 (a), (h), (s) (2002). At the shelter hearing, the mother admitted the petition and the court awarded temporary custody of the child to relatives. The mother thereafter signed a service plan, which included a domestic violence assessment and course, psychological evaluation with a parenting assessment, substance abuse evaluation, and a goal to find steady employment. The service plan was partially completed.

¶ 3 In March 2004, the state filed a Petition for Termination of Parental Rights, alleging that the mother: (a) had abandoned the child; (b) had neglected or abused the child; (c) was an unfit or incompetent parent; (d) had substantially neglected, willfully refused, or had been unable or unwilling to remedy the circumstances that caused the child to be in an out-of-home placement; (e) had experienced a failure of parental adjustment; and (f) had made only token efforts to avoid being an unfit parent. *See id.* § 78–3a–407 (2002). At the trial on the Petition for Termination of Parental Rights, the trial court determined that there was no evidence to support the mother's testimony that she was clean from drug use or had secured safe housing for the child. The trial court also found that the Division of Child and Family Services had made reasonable efforts to provide reunification services, but there had not been a change in the mother's attitudes or the conditions that led to the child's removal. The trial court terminated the mother's rights to the child, ruling that it was in the child's best interest to be adopted by a relative.

¶ 4 Counsel for the mother filed a Notice of Appeal, and a Petition on Appeal, pursuant to Utah Rule of Appellate Procedure 55, raising the legal issue of whether any non-frivolous issues existed on appeal. Counsel also filed a "Motion for Leave to Amend Petition on Appeal, if Necessary; or, in the Alternative, for Direction on *Anders*–Type Briefs." The motion requested guidance regarding filing *Anders* briefs, *see Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), in light of the new expedited procedures allowing the Utah Court of Appeals to resolve an appeal prior to full briefing, *see* Utah R.App. P. 55, 58. We denied the motion, stating that we would "undertake to determine, based upon our review of the record, whether any non-frivolous issues exist[ed]"; we did, however, grant appellant's counsel ten days in which to serve his client with the Petition on Appeal and to incorporate any issues raised by her.

¶ 5 In an apparent attempt to include *Anders* related matters, appellant's counsel filed an Amended Petition on November 1, 2004, adding to counsel's issue of whether any non-frivolous issues existed on appeal the four issues raised by appellant, as well as a certification that counsel had presented a copy of the Amended Petition to appellant and that appellant had raised issues for consideration by the court. The Amended Petition also included a statement of the material facts as they related to the issues on appeal and the appropriate standard of review on each of the issues, but no legal authority or analysis.

¶ 6 The Guardian Ad Litem and the Utah Attorney General responded to appellant's Amended Petition. On November 18, 2004, we issued a Memorandum Decision affirming

the juvenile court's decision terminating the mother's parental rights. Counsel for the mother filed a Petition for Rehearing, requesting either direction for complying with *Anders* under the new expedited procedures relating to appeals from child welfare proceedings or amendment of the Memorandum Decision indicating that Appellant's Amended Petition met the *Anders* requirements. We granted Appellant's Petition for Rehearing, ordered additional briefing, and rescinded and voided our November 18, 2004 Memorandum Decision.

## ISSUES AND STANDARD OF REVIEW

¶ 7 All of the parties to this appeal are requesting that we in effect hold that the requirements of *Anders*, as applied to child welfare appeals in *In re D.C.*, 963 P.2d 761, 764 (Utah Ct.App.1998), are superseded by the recently enacted Utah Rules of Appellate Procedure 55 (rule 55) and 58 (rule 58).[1] This is an issue of law, which we review for correctness. *See Bourgeous v. Department of Commerce*, 2002 UT App 5, ¶ 6, 41 P.3d 461.

¶ 8 In *Anders v. California*, the United States Supreme Court addressed the responsibilities of appointed counsel who conclude that an indigent client's criminal appeal is frivolous. In particular, the Supreme Court set forth procedures that safeguarded both a criminal defendant's constitutional right to counsel and appointed counsel's obligation

1. Utah Rules of Appellate Procedure 55 and 58 became effective in May 2004.

2. The United States Supreme Court set forth the following requirements for appointed counsel who conclude that an indigent client's criminal appeal is frivolous:

> [Appointed counsel's] role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.

not to bring frivolous claims before a court. *Anders*, 386 U.S. at 744, 87 S.Ct. 1396.[2] In 1981, the Utah Supreme Court applied *Anders* to criminal appeals in Utah. *See generally State v. Clayton*, 639 P.2d 168 (Utah 1981). In 1998, the Utah Court of Appeals applied the *Anders* requirements to parental rights termination appeals in Utah. *See In re D.C.*, 963 P.2d at 764.

¶ 9 The parties here ask that we do away with the *Anders* requirements as applied to parental rights termination appeals, arguing that "[t]wo major events have occurred" since we decided *In re D.C.* The parties first cite *Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000), in which the United States Supreme Court noted that the *Anders* procedure was merely "prophylactic" and that "[s]tates are free to adopt different procedures ... [that] adequately safeguard a defendant's right to appellate counsel." *Id.* at 265, 120 S.Ct. 746. The parties also cite the recently enacted rules pertaining to appeals from child welfare proceedings, contending that rules 55 and 58 "adequately safeguard a defendant's right to appellate counsel."[3] The parties therefore argue that compliance with the *Anders* requirements, as adopted for child welfare appeals by *In re D.C.*, is no longer required.

## ANALYSIS

¶ 10 "Those asking us to overturn prior precedent have a substantial burden of

*Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

3. Under rule 55, a petition on appeal shall be prepared by appellant's trial counsel and shall include: (1) a statement of the nature of the case and the relief sought; (2) the entry date of the judgment or order on appeal; (3) the date and disposition of any post-judgment motions; (4) a concise statement of the material adjudicated facts as they relate to the issues presented in the petition on appeal; and (5) a statement of the legal issues presented for appeal, how they were preserved for appeal, and the applicable standard of review. *See* Utah R.App. P. 55(b), (d)(1)-(5). The petition should also include supporting statutes, case law, and other legal authority for each issue raised, including authority contrary to appellant's case, if known. *See id.* 55(d)(6). After reviewing the petition on appeal, any response, and the record, the Utah Court of Appeals may issue a decision or set the case for full briefing. *See id.* 58(a).

persuasion due to the doctrine of stare decisis." *State v. Mauchley,* 2003 UT 10, ¶ 11, 67 P.3d 477 (quotations and citation omitted). Horizontal stare decisis "requires that a court of appeals follow its own prior · decisions." *State v. Menzies,* 889 P.2d 393, 399 n. 3 (Utah 1994). However, "a panel may overrule its own ... decision where ... conditions have changed so as to render the prior decision inapplicable." *Id.* (quotations and citations omitted).

■ ¶ 11 The question, therefore, is whether conditions have changed so as to render *Anders* and *In re D.C.* inapplicable. Although we recognized in *In re D.C.* that the *Anders* requirements "do not ensure a flawless· system of resolving the potential conflict counsel faces in effectively fulfilling his or her duties to both the client and the court," we determined that "this is the best way the courts, including the United States Supreme Court, have resolved [that] conflict." *In re D.C.,* 963 P.2d at 766. Since that time, however, the United States Supreme Court has specifically stated that "the *Anders* procedure is not an independent constitutional command." *Smith,* 528 U.S. at 273, 120 S.Ct. 746 (quotations and citation omitted). Instead, the Supreme Court wanted "to avoid imposing a single solution on the [s]tates from the top down," *id.* at 275, 120 S.Ct. 746 and expressed confidence that states would "craft procedures that, in terms of policy, are superior to, or at least as good as, that in *Anders,*" *id.* at 276, 120 S.Ct. 746.

¶ 12 As a result of the language in *Smith,* we owe no further deference to *Anders,* and are free to revisit *In re D.C.* to the extent it relies on *Anders.* Further, rule 55 requires that a petition on appeal address some, but not all, of the requirements set out in *In re D.C.* when counsel for an indigent parent has concluded that the parent's appeal is wholly frivolous. Thus, we are not prepared to attempt ·a wholesale departure from the requirements of *In re D.C.*

¶ 13 First, in *In re D.C.,* we recognized the need to protect a defendant's right to counsel on appeal. *See In re D.C.,* 963 P.2d at 763–64. Therefore, in an attempt to " 'afford [an indigent defendant] that advocacy which a nonindigent defendant is able to obtain,' " *id.* at 768 (citation omitted), counsel filing a brief pursuant to *In re D.C.* must give a copy of the brief to his client and allow the client enough time to raise any points that she chooses, *see id.* at 765. Counsel's brief must incorporate any points the client raises with counsel or in a pro se brief, along with a certification that he has met these requirements. *See id.* Although neither required nor precluded by rule 55, counsel for appellant here satisfied the need to protect a defendant's right to appellate counsel; in particular, he included in his Amended Petition the issues that his client raised with him, as well as the certification that he gave a copy of the Amended Petition to his client and that she raised additional issues for consideration by the court, which were included in the Amended Petition.[4]

¶ 14 Second, in *In re D.C.,* we balanced this need to protect a defendant's right to appellate counsel with the need to insulate appointed counsel from possible ethical violations arising from the pursuit of frivolous appeals. *See id.* at 764. Therefore, under *In re D.C.,* counsel representing an indigent on appeal must advise the court if he or she believes that the appeal is wholly frivolous after a conscientious examination of it and should request permission to withdraw. *See id.* Here, appellant's counsel merely raised the issue of whether any non-frivolous issues exist on appeal;[5] he did not file a motion to withdraw nor did he advise the court in his Amended Petition that he believed that the appeal was wholly frivolous. Rule 55 neither requires counsel to, nor precludes counsel from, specifically advising the court that he or she believes the appeal is wholly frivolous, and we believe so advising the court would not be inappropriate. However, while rule 55 does not preclude the filing of a motion to

---

4. The issues raised by appellant and the certifications were listed in the Amended Petition in Section Eight, "Legal Issues Presented For Appeal." *See* Utah R.App. P. 55(d)(5).

5. The issue of whether any non-frivolous issues exist on appeal was listed, separate and apart from the appellant's own issues and the certifications, in Section Eight, "Legal Issues Presented For Appeal." *See* Utah R.App. P. 55(d)(5).

withdraw together with a rule 55 petition, we agree with the parties that such a motion would be pointless should the court determine the appeal is frivolous and the matter is concluded.

¶ 15 Third, in *In re D.C.*, we emphasized that appointed counsel must be an active advocate for his client, not only to secure the client's right to counsel, but also to assist the court in resolving the case to the best of its ability. *See id.* at 768 (stating that the requirements set forth therein would " 'induce the court to pursue all the more vigorously its own review because of the ready references . . . to the record' ") (citation omitted). Therefore, a brief filed pursuant to *In re D.C.* must contain a statement of the facts and a description of the proceedings " 'sufficient to permit the [reviewing court] to [fully examine all the proceedings to decide whether the case is wholly frivolous].' " *Id.* at 765 (alteration in original) (citation omitted). If possible, the brief should "refer[ ] to anything in the record that might arguably support the appeal." *Id.* at 764. If no transcript is certified, the brief must include "a stipulation describing the trial proceedings pertinent to each alleged error or by other reliable representation thereof." *Id.* at 765 (quotations and citation omitted).

¶ 16 Here, appellant's counsel did not have access to the transcript, and therefore did not have the full record, when he prepared his Petition on Appeal.[6] But, in accordance with rule 55, he was appellant's counsel at trial and therefore was familiar with the legal file, trial exhibits, trial testimony, and court rulings relevant to the appeal. As such, counsel for appellant was able to include in his Amended Petition a description of and references to information from the legal file, trial testimony, and court rulings that were pertinent to errors alleged by his client.[7] This information is necessary for the court to conduct its own review of the case pursuant to rule 58, and allows us to " '[fully examine all the proceedings to decide whether the case is wholly frivolous].' " *Id.* at 765 (alteration .in original) (citation omitted). We are satisfied that the Amended Petition filed here satisfies both rule 55 and the concerns addressed in *In re D.C.*, and that no stipulation is necessary.

¶ 17 Finally, in *In re D.C.*, we emphasized that abiding by its requirements " 'would tend to protect counsel from the constantly increasing charge that he [or she] was ineffective and had not handled the case with that diligence to which an indigent defendant is entitled.' " *Id.* at 768 (alteration in original) (citation omitted). Therefore, when drafting a brief pursuant to *In re D.C.*, counsel representing an indigent in an appeal must "analyze the issues," *id.* at 765, and " 'retain an adversarial stance by showing that the record has been searched and the law researched with the good faith intent of advancing the [appellant's] interest,' " *id.* at 764 (alteration in original) (citation omitted). "It is not enough to list issues and case citations; the argument must be sufficiently articulated to justify the conclusion that counsel has truly sought to present meritorious issues but cannot." *Id.* (quotations and citation omitted). "[T]his court must be assured that an issue is not just meritless, but that counsel has engaged in sufficient analysis of the record and case law to be secure in the belief that the issues are frivolous." *Id.* at 765 (citation omitted).

¶ 18 Here, the Amended Petition fails to meet these requirements. The issues raised by appellant in the Amended Petition are broad, conclusory, and ambiguous, rather than specific and exact.[8] Also, while the Amended Petition provides the appropriate standard of review, it contains no legal authority or legal analysis and does not demonstrate that "counsel has truly sought to present meritorious issues but cannot." *Id.* at

**6.** "The record on appeal shall include the legal file, any exhibits admitted as evidence, and any transcripts." Utah R.App. P. 57(a).

**7.** This information was included in the Amended Petition in Section Seven, "The Material Facts As They Relate To The Issues Presented For Appeal." *See* Utah R.App. P. 55(d)(4).

**8.** For example, the Amended Petition asks this court to consider such broad issues as whether "the conclusions justify a termination of Appellant's parental rights" and whether "the trial court err[ed] in concluding it was in the best interest of the child to be adopted."

764 (quotations and citation omitted).[9]  In other words, the Amended Petition here does not articulate or analyze the issues, nor does it show that appellant's counsel searched the record and researched the law with the good faith intent of advancing the appellant's interest. *See id.* at 764–65.  Because the Amended Petition here does not " 'protect counsel from the constantly increasing charge that he [or she] was ineffective and had not handled the case with that diligence to which an indigent defendant is entitled,' " *id.* at 768 (alteration in original) (citation omitted), it is inadequate for that purpose and, as we have said, not compliant with rule 55(d)(6).[10]

## CONCLUSION

¶ 19 The Amended Petition is stricken. Counsel for appellant is ordered to file within fifteen days a new Petition on Appeal that complies with the requirements of rule 55 and, if appropriate, such additional matters as set forth in this opinion.

¶ 20 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge, and PAMELA T. GREENWOOD, Judge.

---

9. Ironically, these omissions also render the Amended Petition noncompliant with rule 55(d)(6).

10. Had the Amended Petition we reviewed today complied with the requirements set forth herein, it, along with the court's actions under rule 58, would have been sufficient under *Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).  A state's procedure "afford[s] adequate and effective appellate review to indigent defendants" when it "reasonably ensures that an indigent's appeal will be resolved in a way that is related to the merit of that appeal." *Id.* at 276–77, 120 S.Ct. 746 (quotations and citation omitted).  In *Smith*, the Supreme Court specifically disapproved of procedures (1) that did not require the court to determine that the appeal was frivolous, but merely required a determination that the defendant was unlikely to prevail on appeal;  (2) that allowed counsel to withdraw prior to the determination that the case was frivolous;  (3) that were based upon a "bare conclusion" that an appeal was frivolous;  and (4) that allowed only one tier—either a court or counsel—to review the case for frivolousness. *See id.* at 279–81, 120 S.Ct. 746.  Under the requirements set forth herein, a rule 55 petition purporting to address the issues found in *In re D.C.*, 963 P.2d 761 (Utah Ct.App.1998), may contain far more than a "bare conclusion" that an appeal is frivolous.  Furthermore, the appellate court reviews the petition, any response, transcripts, and the record;  it then rules immediately on those petitions it deems frivolous or orders full briefing on the issues that are not frivolous. Utah R.App. P. 58.  In other words, a finding of frivolousness is required, counsel is retained until an appeal is deemed frivolous, and two tiers—both counsel filing the rule 55 petition and the court itself—review the case for frivolousness.